ADEE v. PECK *et al.*

(*Circuit Court, D. Connecticut.* May 14, 1890.)

**1.** PATENTS FOR INVENTIONS—PATENTABLE INVENTION.

Reissued letters patent No. 6,739, issued November 16, 1875, to James Foley, for an improvement in waste-valves and overflows, consisting in bringing up the outer pipe of the overflow through the casing contiguous to the basin or bath-tub, and securely attaching it to a removable cap resting upon the outside of the casing, is not invalid for want of invention.

**2.** SAME—REISSUE OF LETTERS.

The claim of said reissue being substantially the same as that of the original patent, except that it gives a statement of the prior state of the art, so as to limit the scope of the patent, and omits the element of a rubber ring around the valve, which was only an incidental feature of the invention, and was inserted in the original claim by mistake, the reissue is valid.

**3.** NAME OF PATENT AS TRADE-MARK.

A bill alleging that defendant has infringed a patent owned by complainant, and originally granted to James Foley, for an improvement in waste-valves, and that complainant has sold said valves under the trade name and style of "Foley's" and "Foley's Patent," and "that said trade name, during the life of said letters patent, is identified therewith, and of great value * * * in describing said patented valves as a trade-mark, and that the defendant has sold his infringing valves under the trade name of 'Foley's Patent Valves,'" and praying, *inter alia,* that defendant be enjoined from selling any waste valves under the name of "Foley's" or "Foley's Patent Valves," states only one good cause of complaint, *i. e.,* for infringement of a patent. The name of the patented device is not, properly speaking, a trade-mark. Following *Adee* v. *Peck,* 39 Fed. Rep. 209.

In Equity.

*Briesen & Steele,* for complainant.

*Edward H. Rogers,* for defendants.

WALLACE, J. This is a suit to restrain infringement of reissued letters patent No. 6,739, granted to James Foley, assignor, November 16, 1875; upon an application filed October 1, 1875, for an "improvement in waste-valves and overflows." It is also brought to restrain the infringement of an alleged trade-mark in the name, "Foley's Patent Valves." The defendants are manufacturers and dealers in plumbers' goods, and in 1882, or earlier, purchased from the complainant the patented valves, and sold them in their business, describing them in a catalogue issued by them as "Foley's Patent Valves." In 1886 they commenced to manufacture the valves themselves, having, as they say, satisfied themselves that the patent to Foley was invalid, and consequently that the complainant was not entitled to a monopoly in the manufacture and sale of the valves; and since that time they have continued to manufacture and sell the article, calling them "Foley's Patent Valves."

The subject of the patent is an improvement in devices for permitting the overflow of basins, baths, etc., to escape, when the water reaches a given elevation, by means of the valve, which is closed to permit the basin or bath to be filled. Such devices consist of a vertical tube or stand-pipe which connects by a T coupling with a pipe leading to the basin and a waste-pipe, and having a valve-seat at its lower end, so located in relation to the basin-pipe and the waste-pipe that when the valve is closed the water flowing into the basin cannot escape. The stand-pipe

leads to a wooden or marble slab at the side of the basin or bath-tub, and is covered by a cap, which in the earlier devices was commonly attached by screws to the upper side of the marble or wooden slab. The valve is formed upon the lower end of the tubular stem, which is arranged within the stand-pipe, and the stem is of the length extending above the valve to a point as high as the point in the basin or bath-tub which is to be filled. The valve stem is open at both its upper and lower ends, and is provided with a handle which plays through an opening in the cup. The stand-pipe surrounding the valve-stem allows the water to rise, as the basin fills, until the top of the valve-stem is reached, when any further flow into the basin would overflow into the valve-stem, and escape to the waste-pipe. The valve-stem and valve are practically one structure, and are provided with a device by which they may be raised by means of the handle extending to the cap, and held in a fixed position to permit the water to escape from the basin into the waste-pipe. The specification states the nature of Foley's improvement as follows:

"My invention relates to an improvement that is made for allowing the valve and overflow to be easily removed. For this purpose the valve and its tubular stem is continued up through the marble or wooden slab, or table contiguous to the basin or bath, and provided with a removable cap, through which the stem to the handle passes."

The details of the improvement are particularly described in the specification as follows:

"This standing tube, *f*, passes through the slab or table, *b*, and is provided with a removable cap, *l*, preferably screwed upon the tube, *f*; and through the cap, *l*, is a rod, *m*, with a handle, *n*, at the upper end, and the lower end is connected by a bridge or bail with a tubular stem, *o*, that is within the tube, *f*, and forms the overflow pipe when the water rises in the basin or bath above the upper end of this tube, *o*. The rod, *m*, is made so that, when it is raised and partially revolved, it will suspend the tubular stem and valve."

The claim is as follows:

"The stand-pipe, *f*, of the bath or basin overflow passing through the slab or table, *b*, and receiving at its upper end the removable cap, *l*, in combination with the overflow-pipe, *o*, valve, *r*, and means of suspending the valve and overflow cap from the pipe, substantially as set forth."

It is quite apparent from the evidence in respect to the prior state of the art that the improvement really made by Foley in pre-existing waste-valves consisted in bringing up the stand-pipe or outer pipe of the overflow through the casing or slab contiguous to the basin or bath-tub, and securely attaching it, preferably by a screw connection, to a removable cap resting upon the outside of the casing or slab. This improvement was a useful and meritorious one. The stand-pipe is efficiently supported in position by the cap itself; both parts, when connected, being integral, thus affording a firm and durable attachment of the stand-pipe to the slab. The cap can be removed more readily than can those which are fastened by bolts or screws to the slab; and when the cap is removed the whole diameter of the stand-pipe is exposed, and the valve-stem and its parts can be conveniently removed for cleaning or repairs. According to the testimony, since the Foley valves have been introduced, they

have completely superseded the old valves with the trade. No one can examine his valve for a moment without seeing that it is a more convenient, more artistic, and a better device, practically, than any of those shown in the earlier patents; and, when it appears that many modifications of the connection between the stand-pipe, the cap, and the slab had been made by plumbers in attempts at improvement, which fell so far short of success that as soon as his was introduced the old ones were supplanted, there is sufficient evidence that the change made by him, though a simple one, was not an obvious thing to those skilled in the art, and involved invention. The phraseology of the claim is such that the patent is not infringed unless the improved stand-pipe and cap of the claim are employed in conjunction with all the other operative parts of an overflow valve. The stand-pipe of the claim is one which passes through the slab, and is adapted to receive the cap by a connection which unites the two parts integrally. The cap is one that is removable,— adapted to be disconnected with the stand-pipe. The "means of suspending the overflow pipe from the cap" are the bail and rod. Inasmuch as the defendants are making and selling the identical valves of the patent, the complainant is entitled to a decree, if the patent is valid. As has been indicated, the patent is not invalid for want of invention. The claim is not met by any waste-valves previously patented or in public use which did not have the stand-pipe and cap constructed and arranged as described. The valves which are alleged to have been made in 1872 by Carr & Co. are the only ones, containing such a stand-pipe and cap, in respect to which any evidence has been given. The defense which rests on the use of these valves is not established by that cogent evidence which is required to overthrow the presumption of novelty arising from the grant of letters patent. Indeed, the patent to Carr, granted December 7, 1875, in which he disclaims expressly the device shown in the patent to Foley, is enough, in view of the circumstances of the alleged prior use, to discredit the defense. Although the patentee acquiesced in the rejection of the present claim by the patent-office until it was amended by adding the words, "means for suspending the valve and overflow pipe from the cap," the only effect of such acquiescence is to preclude the owner of the patent from setting up any construction of the claim which would omit the parts introduced by the amendment as a limitation of the scope of the claim.

The defendants insist that the reissue is invalid. The application for the reissue was made within two years from the grant of the original, and nothing appears in the record to indicate that the reissue was sought in order to overreach devices which had been invented or patented, or used by others, in the mean time. The peculiar details of construction and arrangement of the stand-pipe and cap which constitute the real invention of the patentee were plainly shown in the drawing of the original patent, suggested by the language of the description, and incorporated into the claim by letters of reference to the drawing. The reissue contains statements respecting the prior state of the art which did not appear in the original. These statements are, in effect, a disclaimer,

and limit the scope of the patent as the original patent would be limited by judicial construction, upon proof of the prior state of the art, in a suit brought upon it. They tend to define more clearly the line between new and old, and thereby to remove doubts as to the precise limits of the invention. There is no substantial difference between the claim of the original, interpreted as it would be if a suit were brought upon it, and the prior state of the art shown, and the claim of the reissue, except that in the latter the rubber ring around the valve is omitted as an element. It is obvious that the rubber ring around the flange or rib of the valve, although useful, was only an incidental and preferable feature of the invention, so obvious that the inference that there was a mistake in incorporating it into the claim of the original is almost irresistible. The claim of the reissue omits as an element the T coupling, which is the seat of the valve, and forms the connection between the basin-pipe and the waste-pipe and the stand-pipe. By necessary implication, this must be read into the claim of the reissue; otherwise the combination would be wholly inoperative. The claim of the reissue is consequently, in all respects, the claim of the original, except in omitting the rubber ring around the valve. In short, a comparison of the original and reissued patents suggests that the power of the commissioner to grant a reissue, to correct a mistake which would render the original patent inoperative, has seldom been more wisely and reasonably exercised than in the present instance.

The complainant is entitled to the usual decree for an injunction and an accounting. So far as his case proceeds upon the theory of an infringement of his trade-mark, it is controlled by the previous decision of this court, upon the demurrer to the bill, by Judge SHIPMAN. 39 Fed. Rep. 209.